CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

July 27, 2010

      Memo to Counsel Re:  Pennsylvania National Mutual Casualty Insurance Co. v. Attsgood Realty, Civil No. JFM-09-2650

Dear Counsel:

     I have reviewed the memoranda submitted in connection with Penn National's motion for summary judgment, Lakie Roberts' motion for summary judgment, and Penn National's motion for default judgment as to defendants Attsgood Realty and Stewart D. Sachs. Roberts' motion for summary judgment is denied. Penn National's motion for summary judgment is granted to the extent that Penn National seeks to limit its liability to Roberts to $370,600. Penn National's motion for default judgment against Attsgood Realty and Sachs is granted.

     Unfortunately, my schedule does not permit me to write a full opinion. Because the issues are well defined by your memoranda, I will simply state the reasons for my rulings summarily.

Penn National's Motion for Summary Judgment and Roberts' Motion for Summary Judgment

     In a lead paint case such as this, Maryland follows the "continuous trigger" rule. *See generally Maryland Cas. Co. v. Hanson*, 902 A.2d 152, 170 (Md. Ct. Spec. App. 2006); *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1099-1100 (Md. Ct. Spec. App. 2002) (asbestos exposure case). Under application of this rule, "pro-rata allocation by 'time on the risk'" applies, and "[e]ach insurer is liable for that period of time it was on the risk compared to the entire period during which damages occurred. . . . [L]osses will be prorated to the insured [for uninsured periods], unless a gap in coverage is due to the insured's inability to obtain insurance." *Utica Mut.*, 802 A.2d at 1104 (internal marks and citations omitted).[1] The evidence in the underlying litigation, including the testimony of Roberts' expert, Jaclyn Blackwell-White, M.D., established that Roberts was first exposed to lead paint when she was born on January 17, 1991. Dr. Blackwell-White's own testimony (and the closing argument made by Roberts' counsel) in the underlying trial on the merits refutes Roberts' present argument that her period of harmful lead paint exposure should be defined to have begun only in September 1992, when her blood-lead level exceeded a level of ten. Medical tests established that Roberts' final elevated blood-lead level was in August 1995. Thus, the time that Roberts was exposed to lead paint and was damaged by it was a period of 55 months (from mid-January

---

[1] Roberts has presented no evidence to show that coverage was unavailable to the owners of the property in question because of an inability to obtain insurance.

1991 to August 1995).[2]  Penn National provided coverage to Attsgood Realty and Sachs from January 13, 1992 to January 13, 1994 – a period of 24 months.[3]  Twenty-four months is approximately 43.6% of 55 months.  The judgment obtained by Roberts against Attsgood Realty, Sachs, and Gordon Gondrizick in the underlying action was $850,000.  Thus, I find that Penn National is liable to Roberts for $370,600 (43.6% x $850,000), but no more.

      Roberts' arguments in support of the proposition that Penn National should be held liable for the full $850,000 judgment she obtained against Attsgood Realty and Sachs are entirely unpersuasive.  First, contrary to Roberts' contention, Maryland's pro-rata allocation rule applies not only in cases involving multiple insurers but also involving a single insurer who has insured the subject premises for only a portion of the time during which a plaintiff was exposed to hazardous material.  *See, e.g.*, *Hanson*, 902 A.2d at 170.  Second, Roberts' contention that Penn National should be held liable for the entire amount of the judgment she obtained because Attsgood Realty and Sachs were found to be jointly and severally liable with their codefendant, Gordon Gondrizick, misses the point.  The law that applies to joint and several liability is entirely different, and separate and apart, from Maryland's pro-rata allocation law.

<u>Penn National's Motion for Default Judgment Against Attsgood Realty and Sachs</u>

      Attsgood Realty and Sachs have failed to file any motions or pleadings in this action after having received a copy of the complaint and waived service of process.  Accordingly, Penn National clearly is entitled to a default judgment declaring that it is liable to Attsgood Realty and Sachs, under the insurance policies issued in connection with Roberts' claims against them, only for a 24 month period and in the amount of $370,600.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                    Very truly yours,

                                    /s/

                                    J. Frederick Motz
                                    United States District Judge

---

[2] Roberts continued to reside at the subject premises until sometime in 1998 but I find that the August 1995 test should be the cut-off date for application of the continuous trigger rule because by that time the harm had been done.

[3] Penn National contends that this 24 month period should be reduced to 22 months because Attsgood Realty sold the subject property to Gordon Gondrizick on November 1, 1993, thus terminating the coverage provided by Penn National.  Although under the terms of the insurance contract Penn National may be correct, the record is entirely barren of facts showing that Penn National's coverage in fact was terminated.  Thus, I find that 24 months, rather than 22 months, should be deemed to be the period of Penn National's coverage.